UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CARLOS JAVIER BERRIOS-QUINONES<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:22-cv-01111-JAW |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

A consumer brought a series of products liability claims against various entities in the production line of a microwave that allegedly caused an electric shock, with subject matter jurisdiction premised on complete diversity between the parties. Concluding that the consumer has not established that it is more likely than not that there was complete diversity of citizenship at the time of filing as required by 28 U.S.C. § 1332, the court dismisses the action for lack of federal jurisdiction.

## I. BACKGROUND

### A. Procedural History

On March 3, 2022, Carlos Javier Berrios Quinones (Berrios) filed a complaint against Costco Wholesale Corporation (Costco), Samsung Electronics America, Inc. and Samsung Fire & Marine Insurance Co., Ltd (collectively, Samsung), Universal Insurance Company (Universal), and RM Contractors (RM) asserting negligence and strict liability claims and seeking damages caused by an electrical injury involving a microwave. *Compl.* (ECF No. 1). On December 22, 2022, Mr. Berrios filed a first

amended complaint. *Am. Compl.* (ECF No. 20). On May 4, 2023, Mr. Berrios filed his second amended complaint, which is the operative pleading. *Second Am. Compl.* (ECF No. 29) (*Compl.*).

On July 6, 2023, Universal filed its answer. *Ans. to Second Am. Compl.* (ECF No. 34). Costco filed its answer on July 23, 2023. *Ans. to Second Am. Compl.* (ECF No. 39). Samsung filed its answer on August 5, 2024. *Ans. to Second Am. Compl. and Affirmative Defenses* (ECF No. 56).

On September 14, 2023, Samsung filed a motion requesting a venue transfer from the District of Puerto Rico to the Middle District of Florida. *Defs. Samsung Electronics America, Inc.'s and Samsung Fire & Marine Ins. Co., LTD. (US Branch)'s Memo. of Law in Supp. of the Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)* (ECF No. 44). On October 13, 2023, Universal filed a memorandum in opposition to the motion to change venue. *Mot in Opp'n to Defs.' Samsung Electronics America. Inc.'s and Samsung Fire & Marine Ins. Co., LTD.'s (US Branch) Mot. to Transfer Venue* (ECF No. 48). Samsung filed its reply on November 3, 2023. *Defs.' Samsung Electronics America Inc.'s and Samsung Fire and Marine Ins. Co., LTD. (US Branch)'s Reply in Further Support of the Mot. to Transfer Venue* (ECF No. 50). The Honorable Judge Delgado-Colon denied the motion to transfer on June 13, 2024. *Order* (ECF No. 54). The case was subsequently reassigned to this Judge on February 21, 2025. (ECF No. 63).

On January 30, 2026, Costco and Samsung jointly filed a motion for summary judgment, *Mot. for Summ. J.* (ECF No. 83) (*Samsung Mot. for Summ. J.*), as well as

their statement of uncontested material facts. *Samsung Electronics America, Inc., Samsung Fire & Marine Insurance Co., LTD. (U.S. Branch), and Costco Wholesale Corp.'s Statement of Uncontested Material Facts in Supp. of Mot. for Summ. J.* (ECF No. 82) (*S-CDSMF*). Also on January 30, 2026, Universal filed its own motion for summary judgment, *Mot. for Summ. J.* (ECF No. 85) (*Universal Mot. for Summ. J.*) and attached statement of material facts. *Mot. for Summ. J.* Attach. 1, *Statement of Uncontested Material Facts in Supp. of Summ. J.* (*UDSMF*).

On February 27, 2026, Mr. Berrios filed his opposition to Samsung's motion for summary judgment. *Mr. Berrios' Opp'n to SEA & Costco's Joint Mot for Summ J. (ECF 83)* (ECF No. 95) (*Pl.'s Opp'n to Samsung)*, as well as his response and statement of additional material facts. *Id.*, Attach. 1, *Mr. Berrios' Resp. to SEA and Costco's Statement of Material Facts; and Mr. Berrios' Statements of Uncontested Facts* (S-CPRDSMF and S-CPSAMF). The same day, Mr. Berrios filed his opposition to Universal's motion for summary judgment. *Mr. Berrios' Opp'n to Universal's Mot. for Summ. J. (ECF 85)* (ECF No. 96) (*Pl.'s Opp'n to Universal*). On April 13, 2026, Costco and Samsung filed their reply to Mr. Berrios's opposition to their motion for summary judgment, *Reply in Supp. of Mot. for Summ. J.* (ECF No. 114) (*Samsung Reply)*, together with their reply to Mr. Berrios's statement of additional material facts. *Id.*, Attach. 2, *Table Defs.' Resp. to Pl.'s Additional Facts* (S-CDRPSAMF). On April 15, 2026, Universal filed its reply to Mr. Berrios's opposition to its motion for summary judgment. *Reply in Supp. of Mot. for Summ. J. at Docket No. 85* (ECF No. 116) (*Universal Reply*). Mr. Berrios filed a sur-reply to their reply on May 1, 2026,

which also includes his statement of material facts which he asks the court to accept nunc pro tunc. *Pl.'s Sur-Reply to Def. Universal's Reply in Supp. of Mot. for Summ. J (ECF 116)* (ECF No. 119) (*Pl. Sur-Reply to Universal*); Attach. 1, *Mr. Berrios' Resp. to Universal Statement of Material Facts; and Mr. Berrios' Statements of Uncontested Facts* (*UPRDSMF* and *UPSAMF*).

## II. STATEMENT OF UNDISPUTED FACTS[1]

### A. The Parties and the Alleged Incident

Carlos Berrios is the Plaintiff in this case. S-CDSMF ¶ 1; S-CPRDSMF ¶ 1. Defendant SEA is a corporation organized under the laws of New York, with its principal place of business in New Jersey. S-CDSMF ¶ 2; S-CPRDSMF ¶ 2. Defendant Costco is a corporation organized under the laws of Delaware, with its principal place of business in Seattle, Washington. S-CDSMF ¶ 3; S-CPRDSMF ¶ 3.

---

[1] Based on the parties' briefing and the record available to the Court, the Court finds the following material facts undisputed for the purposes of summary judgment. "S-CDSMF" refers to Samsung and Costco's statement of undisputed material facts. *Samsung Electronics America, Inc., Samsung Fire & Marine Insurance Co., LTD. (U.S. Branch), and Costco Wholesale Corp.'s Statement of Uncontested Material Facts in Support of Mot. for Summ. J.* ¶¶ 1-74. "S-CPRDSMF" refers to Mr. Berrios's response to the Samsung and Costco's' statement of undisputed material facts. *Pl.'s Facts* ¶¶ 1-74. "S-CPSAMF" refers to Ms. Berrios's statement of additional undisputed material facts. *Id.* ¶¶ 1-137. "S-CDRPSAMF" refers to Costco and Samsung's reply to Mr. Berrios's statement of additional undisputed material facts. *Table Defs.' Resp. to Pl.'s Additional Facts* ¶¶ 1-137. "UDSMF" refers to Universal's statement of undisputed material facts. *Mot. for Summ. J.* (ECF No. 85) Attach. 1, *Universal's Statement of Uncontested Material Facts in Supp. of Summ. J.* ¶¶ 1-64. "UPRDSMF" refers to Mr. Berrios's response to Universal's statement of undisputed material facts. *Pl.'s Sur-Reply to Def. Universal's Reply in Supp. of Mot. for Summ. J (ECF 116)* (ECF No. 119) Attach. 1 pt. I, *Mr. Berrios' Resp. to Universal Statement of Material Facts; and Mr. Berrios' Statements of Uncontested Facts* ¶¶ 1-64. "UPSAMF" refers to Mr. Berrios's statement of additional material facts responsive to Universal. *Id.* Attach. 1 pt. II, *Mr. Berrios' Resp. to Universal Statement of Material Facts; and Mr. Berrios' Statements of Uncontested Facts* ¶¶ 1-163. Where the Court cites one of the parties' material facts, it does so pursuant to Rule 56(e)(2) because the asserted fact was not specifically disputed nor admitted. *See* FED. R. CIV. P. 56(e)(2). Where the Court cites evidence in the record, it does so pursuant to Rule 56(c)(3), which permits consideration of "other materials in the record." FED. R. CIV. P. 56(c)(3).

Defendant SFMIC is SEA's insurer. S-CDSMF ¶ 4; S-CPRDSMF ¶ 4. Defendant Universal Insurance Company is a corporation organized under the laws of the commonwealth of Puerto Rico, with its principal place of business in San Juan, PR. S-CDSMF ¶ 5; S-CPRDSMF ¶ 5.

Mr. Berrios purchased a microwave through Costco's website on or about November 28, 2020. S-CDSMF ¶ 14; S-CPRDSMF ¶ 14. The microwave was installed on January 27, 2021 by Raymond Medina.[2] S-CDSMF ¶ 20; S-CPRDSMF¶ 20. Mr. Berrios was in the apartment during the installation. S-CDSMF ¶ 23; S-CPRDSMF ¶ 23. Mr. Berrios subsequently received an electrical shock from the microwave on March 5, 2021.[3] S-CDSMF ¶¶ 28, 32; S-CPRDSMF ¶¶ 28, 32.

### B. Carlos Berrios's Claimed Domicile

In his complaint, Mr. Berrios alleges he is a resident of Orlando, Florida. UDSMF ¶ 3; UPRDSMF ¶ 3. The alleged accident, however, occurred in his apartment located in Carolina, Puerto Rico. UDSMF ¶ 5; UPRDSMF ¶ 5. Mr.

---

[2] Defendants' paragraph 20 states "[o]n or about January 27, 2021, Raymond Medina and/or David Medina installed the Microwave in the Apartment." S-CDSMF ¶ 20. Mr. Berrios objects to S-CDSMF paragraph 20, as he claims the microwave was installed specifically by Raymond Medina, and further notes that COSTCO "maintained no meaningful documentation verifying installer Raymond Medina's qualifications". S-CPRDSMF ¶ 20. The court has altered paragraph 20 to reflect that Raymond Medina installed the microwave and otherwise overrules Mr. Berrios's objection as nonresponsive.

The Court also notes that Mr. Berrios's paragraphs are not numbered numerically to align with the statements of material fact he is responding to, as he has also included additional numeric designations for his responses. Because Mr. Berrios has quoted in full each statement of material fact he responds to, the Court has altered the citations to correspond with those of the Defendant' for ease of understanding.

[3] Defendants' paragraph 32 reads, in relevant part "Approximately one minute after Plaintiff began installing the strip lights beneath the microwave, Plaintiff alleges that he experienced an electrical shock". S-CDSMF ¶ 32. Mr. Berrios opposes this statement on the grounds that he in fact, did receive an electric shock. The Court is required to view the record in the light most favorable to the non-movant and thus has omitted the qualification that the injury is alleged.

Berrios purchased the Carolina apartment in 2020. UDSMF ¶ 6; UPRDSMF ¶ 6. At the time of filing, Mr. Berrios was residing in Puerto Rico.[4] UDSMF ¶ 7; UPRDSMF ¶ 7; UDSMF ¶ 8; UPRDSMF ¶ 8; UDSMF ¶ 22; UPRDSMF ¶ 22. At the time he filed his complaint, Mr. Berrios owned no real property in the state of Florida. UDSMF ¶ 17; UPRDSMF ¶ 17. He, at that time, owned two motorboats which he docked in Puerto Rico. UDSMF ¶ 27; UPRDSMF ¶ 27. At the time Mr. Berrios filed his complaint, he was working as an Administrator of Campo Rico Laboratory, which is located in San Juan, Puerto Rico. UDSMF ¶ 11; UPRDSMF ¶ 11. He has held this title since 2017. UDSMF ¶ 12; UPRDSMF ¶ 12.

Mr. Berrios has never paid taxes in the state of Florida.[5] UDSMF ¶ 19; UPRDSMF ¶ 19. In 2022, Mr. Berrios filed his taxes in Puerto Rico.[6] UDSMF ¶ 20; UPRDSMF ¶ 20. In his 2022 Puerto Rico tax return, Mr. Berrios provided an address in San Juan, Puerto Rico as his postal and residential address.[7] UDSMF ¶ 21; UPRDSMF ¶ 21. He additionally represented that he had resided in Puerto Rico for the entirety of 2022.[8] UDSMF ¶ 22; UPRDSMF ¶ 22. Mr. Berrios further represented that he did not maintain any accounts outside of Puerto Rico.[9] UDSMF

[4] Mr. Berrios clarifies that he "rendered taxes in PR because the income for his remote work in Orlando is generated in Puerto Rico. UPRDSMF ¶ 12. The Court notes this clarification.

[5] Mr. Berrios clarifies that he has not "rendered taxes in FL because his income is generated by his remote work in Puerto Rico. UPRDSMF ¶ 19. The Court notes this clarification.

[6] Mr. Berrios clarifies that he "rendered taxes in PR because the income for his remote work in Orlando is generated in Puerto Rico. UPRDSMF ¶ 20. The Court notes this clarification.

[7] Mr. Berrios clarifies that this address is "the address he uses for the tax returns that he files in PR for the income generated in PR. UPRDSMF ¶ 21. The Court notes this clarification

[8] Mr. Berrios clarifies that this address is "the address he uses for the tax returns that he files in PR for the income generated in PR. UPRDSMF ¶ 22. The Court declines to accept this clarification because it is nonresponsive.

[9] Mr. Berrios clarifies that he does not have any financial accounts in or outside of Puerto Rico. UPRDSMF ¶ 24. The Court notes this clarification.

¶ 24; UPRDSMF ¶ 24. Mr. Berrios voted in Puerto Rico in 2020,[10] UDSMF ¶ 30; UPRDSMF ¶ 30, and was registered to vote in Puerto Rico on the date he filed his complaint.[11] UDSMF ¶ 29; UPRDSMF ¶ 29.

## III. THE PARTIES' POSITIONS

### A. Samsung and Costco's Motion for Summary Judgment

Samsung and Costco argue that the record does not support the allegation that the microwave Mr. Berrios claims injured him was defectively designed, defectively manufactured, or inadequately warned, and maintain that the evidence instead proves that the electrical outlet into which the Microwave was plugged lacked electrical grounding protection. *Samsung Mot. for Summ. J.* at 1-2. Samsung and Costco contend that Mr. Berrios's case depends entirely on the opinions of a single expert who did not apply a reliable methodology in his reporting and whose testimony they have separately moved to exclude. *Id.* at 2. They assert that exclusion of the expert would be fatal to the case, which rests on "asserted theories [that] involve electrical engineering issues beyond the knowledge of a lay jury." *Id.* at 12. They further claim that, even if the testimony is included, Mr. Berrios has still proffered insufficient evidence to establish his claims under Puerto Rico law. *Id.* His manufacturing defect claim fails because it does not allege a specific defect the microwave had or compare the specific microwave to others in the same product line.

---

[10] Mr. Berrios clarifies that "in the year 2024 he went to vote at the assigned college in Florida and that he was unable to enter his vote". UPRDSMF ¶ 30. The Court declines to accept this clarification as it is nonresponsive.

[11] Mr. Berrios states that he does not contest this fact but also clarifies that he was registered to vote in Florida. UPRDSMF ¶ 29. The Court notes this clarification.

*Id.* at 13. They argue his design defect claim fails because it does not compare the microwave to industry standards or identify an alternative design. *Id.* at 14. They further argue that his failure to warn claim fails because the product manual accompanying the microwave included clear warnings and instructions specifically concerning electrical safety, proper installation, and safe use, and because Mr. Berrios has identified no deficiency in the warnings provided. *Id.* at 15. Finally, Samsung and Costco argue that the evidence establishes that the microwave's installation was performed by third parties over which they had no control, which undermines any claim that Samsung and Costco as entities performed any negligent act. *Id.* at 16.

### B. Carlos Berrios's Opposition to Samsung and Costco's Motion for Summary Judgment

Mr. Berrios argues that the warnings that Samsung includes with its microwaves itself support the inference that the microwave caused the shock he experienced. *Pl. Opp'n to Samsung* at 1. He posits that the microwave incorporates no internal ground-fault protection, which increases the risk of a severe shock akin to what he experienced. *Id.* at 2. Mr. Berrios defends the qualifications and methodology of his proffered expert witness. *Id.* at 6-10. He argues that the expert witness identified concrete design defects in the microwave in question. *Id.* Mr. Berrios clarifies that he does not raise the argument that the microwave deviated from others in Samsung's production line, but that the design itself is unsafe. *Id.* at 10. He further argues that the warnings were not sufficiently detailed as to the consequences of failure to ground the microwave. *Id.* at 11. Finally, he argues that

Costco cannot disclaim liability by pointing to installation by contractors because it retained RM Contractors as an "Authorized Servicer" to perform installations, and itself deemed Mr. Medina, the installer, as qualified despite his holding merely an 'HVAC certificate'. *Id.* at 18-19.

**C. Samsung and Costco's Reply to Carlos Berrios**

In reply, Samsung and Costco argue that Mr. Berrios's proffered defenses confirm, rather than undermine, the central premise of their motion for summary judgment by acknowledging that the hazard arose not from a defect in the microwave but from the electrical outlet lacking an effective ground. *Samsung Reply* at 1-3. They argue that Mr. Berrios attempts to meld elements of different product liability theories into a collective harm, which necessarily fails since Puerto Rico does not recognize this "hybrid theory." *Id.* at 3-4. They note that regulations issued by the National Electrical Code do not govern internal design of appliances, but merely how such equipment is connected to the electrical system. *Id.* at 4-5. Samsung and Costco further argue that Mr. Berrios's maintenance of his failure to warn claim concedes that Samsung in fact did include express warnings that installing the appliance without proper grounding could result in severe or fatal electric shock. *Id.* at 8. Finally, they argue that Plaintiff has functionally abandoned his manufacturing defect claim. *Id.* at 9-10.

**D. Universal's Motion for Summary Judgment**

Universal argues that the Court lacks subject matter jurisdiction as there was not complete diversity at the time of initial filing. This is because, as they allege, the

Plaintiff's domicile was Puerto Rico at the time of filing, rather than Florida as he claimed. *Universal Mot. for Summ. J.* at 2. Because diversity jurisdiction requires complete diversity and because Universal and RM Contractors were also citizens of Puerto Rico at the time of filing, Universal contends that the Plaintiff has failed to establish grounds upon which the court can exercise jurisdiction. *Id.* at 8.

To bolster this conclusion, Universal reminds the Court that domicile is determined by considering a "'a variety of factors indicating the extent of a particular party's ties to the purported domicile,' including current residence, location of personal and real property, location of bank accounts, membership in fraternal organizations, churches and clubs, place of employment, voter registration, where political and civil rights are exercised, driver's license and places where they pay taxes." *Id.* at 5 (citing *Colon v Blades*, 570 F. Supp 2d 204 (D.P.R. 2008) (citing *García Pérez v. Santaella,* 364 F.3d 348, 350 (1st Cir. 2004))). Universal argues that Mr. Berrios was residing in Puerto Rico at the time of filing and paid taxes in Puerto Rico for fiscal year 2022, asserting in so doing that he had resided in Puerto Rico for the entirety of the year. *Id.* at 6-7. At the time of filing, Plaintiff was also allegedly employed in Puerto Rico and had strong family ties to Puerto Rico. *Id.* at 7-8. Finally, the Plaintiff allegedly owned multiple motorboats that were all located in Puerto Rico, was registered to vote in Puerto Rico, and he had a Puerto Rican driver's license. *Id.* at 8.

Universal further argues that, even were the Court to determine it has subject matter jurisdiction, it would lack personal jurisdiction over the parties because Mr.

Berrios failed to serve RM with summons in accordance with Federal Rule of Civil Procedure 4. *Id* at 8.[12] Universal additionally argues that the case, if resolved on the merits, still warrants summary judgment, as the Plaintiff has not made out strict product liability claims against Universal and RM and lacks sufficient evidence to establish the essential elements of his negligent installation claims. *Id.* at 10. Finally, Universal argues that the claims, if construed as strict products liability claims, lack sufficient evidence. *Id.* at 16-17.

### E. Carlos Berrios's Opposition

In opposition, Mr. Berrios argues that he was domiciled in Florida at the time of filing. *Resp. to Universal.* at 1. Mr. Berrios contends that he has been domiciled in Florida since 2012, where he claims he maintains his home, drivers license, voter registration, and vehicle. *Id.* Mr. Berrios acknowledges that he was physically present in Puerto Rico at the time of filing but argues this should not affect a change in domicile, as he was only temporarily residing there for the purpose of receiving medical care. *Id.* Mr. Berrios argues that the record is devoid of evidence suggesting that he intended to abandon his established Florida domicile. *Id.* at 8. He further argues that he performs his work remotely from Florida, and thus neither his employment nor his filed taxes are representative of his actual domicile. *Id.* at 8-9. He also alleges that he has maintained an active bank account in Orlando since 2012 and has held a Florida SunPass[13] since 2021. *Id.* Finally, Mr. Berrios notes that the

---

[12] Universal also notes that RM has "never made an appearance in the present case." *Id.* at 9.

[13] A SunPass is an electronic Prepaid Toll Program. *See* SunPass, *Frequently Asked Questions,* https://www.sunpass.com/en/support/faq.shtml (last visited Oct. 9, 2026). Users purchase a pass in

fact that he left his Florida residence empty during his prolonged recovery in Puerto Rico indicates intent to return, grounding his domicile claim. *Id.*

Regarding Universal's alternate grounds for summary judgment, Mr. Berrios argues that Universal improperly conflates the question of personal jurisdiction over its insured, RM, with its own jurisdictional ties to the forum, and claims that any deficiencies in service of process are a red herring. *Id.* at 10-11. Mr. Berrios agrees with Universal's position that claims against it sound in ordinary negligence rather than strict product liability but maintains that the facts as alleged support an inference of negligent installation of the microwave. *Id.* at 11. Mr. Berrios also maintains that the combined failures of defective installation, design, and warnings caused his electrocution. *Id.* at 13.

**F. Universal's Reply**

In its reply to Mr. Berrios's opposition, Universal maintains its stance that the Plaintiff has failed to show, by a preponderance of the evidence, that he was in fact domiciled in Florida. *Universal Reply* at 2. They note that physical presence is a core element of domicile, which requires both "physical presence in a place and the intent to make that place one's home." *Id.* at 2 (quoting *Valentín v. Hospital Bella Vista,* 254 F.3d 358 (1st Cir. 2001)). Mr. Berrios's admission that he was physically in Puerto Rico at the time of filing is thus, according to Universal, a concession as to place of domicile. *Id.* at 3. Universal argues that Mr. Berrios's claim that he was only in Puerto Rico to receive medical care is insufficient to rebut the claim that he

the form of a sticker which they attach to their windshield to be automatically charged upon passage through toll lanes. *Id.*

was domiciled there. *Id.* at 3-4. They reiterate other indicia of "intent to remain" in grounding their continued assertion that Mr. Berrios's true home was in Puerto Rico. *Id.* at 3-5. On the merits, Universal maintains that Mr. Berrios has failed to establish that the RM Contractors were negligent or to sufficiently articulate a causal connection between any purported negligence and his alleged injuries. *Id.* at 5-6.

### G. Carlos Berrios's Sur-Reply

In his sur-reply, Mr. Berrios first asks the Court to receive nunc pro tunc his attached response to Universal's statement of material facts and his own statement of uncontested facts, which he notes were cited extensively in his last filing (at ECF No. 96) and were mistakenly omitted from the docket due to a clerical filing error. *Pl. Sur-Reply to Universal* at 1. Mr. Berrios argues that he has freely admitted his physical presence in Puerto Rico at the time of filing throughout the pendency of litigation and maintains his position that this does not evince intent to abandon his previously established Florida domicile. *Id.* at 3. He reiterates the same indicia of intent to remain raised in his initial response to Universal's motion for summary judgment. *Id.* at 3-4. On the merits, he defends his retained expert's testimony against Universal's allegations that his reporting was insufficient to establish negligence on the part of RM Contractors. *Id.* at 4-6.

## IV. LEGAL STANDARD

Rule 12(b)(1) is "the proper vehicle for addressing a variety of jurisdictional questions." *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 360 (D. Me. 2012) (citing *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) ("[Rule 12(b)(1)] is a large umbrella, overspreading a variety of different types of challenges"). The

burden falls on the party invoking jurisdiction "clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Marcello v. Maine*, 464 F. Supp. 2d 38, 41 (D. Me. 2006) (citing *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996)). Furthermore, the Court may consider extrinsic materials when ruling on dismissal under Rule 12(b)(1). *Id.* (citing *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction . . . the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff . . . . In addition, the court may consider whatever evidence has been submitted . . .").

In *Newman-Green, Inc. v. Alfonzo-Larrain*, the Supreme Court wrote that "[i]n order to be a citizen of a State within the meaning of the diversity statute, a natural person must be both a citizen of the United States *and* be domiciled within a state." 490 U.S. at 828 (emphasis in original) (citing *Robertson v. Cease*, 97 U.S. 646, 648-49 (1878); *Brown v. Keene*, 33 U.S. 112, 115 (1834)). "For the purposes of diversity, a person is a citizen of the state in which he is domiciled." *Padilla-Mangual v. Pavía Hosp., Inc.*, 516 F.3d 29, 31 (1st Cir. 2008) (collecting cases).

Here, the crucial question, therefore, is domicile, which must be determined at the time the suit was filed. *Padilla-Mangual*, 516 F.3d at 31 (citations omitted). "Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." *García Pérez*, 364 F.3d at 350 (citing *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992)). "A person's domicile 'is a place

where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Padilla-Mangual*, 516 F.3d at 31 (quoting *Rodríguez-Díaz v. Sierra-Martínez*, 853 F.2d 1027, 1029 (1st Cir. 1988)). Significantly, "[w]hile a person may have more than one residence, he can only have one domicile." *Bank One*, 964 F.2d at 53. There are two requirements for domicile: (1) "physical presence in a place" and (2) "the intent to make that place one's home." *Valentín*, 254 F.3d at 366 (citing *Rodríguez-Díaz*, 853 F.2d at 1029).

In assessing the latter requirement, intent, the First Circuit has instructed courts to consider these factors: "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes." *García Pérez*, 364 F.3d at 351 (alteration in original) (quoting 13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3612 (2d ed. 1984)); *see also Bank One*, 964 F.2d at 50 ("the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment") (quoting *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 11-12 (1st Cir. 1991) (per curiam)). These factors are to be applied in a holistic rather than mechanistic manner, as "[n]o single factor is dispositive, and the analysis focuses not simply on the number of contacts with the

purported domicile, but also on their substantive nature." *García Pérez*, 364 F.3d at 351 (citing *Lundquist*, 946 F.2d at 12).

In terms of the evidence the Court may consider in making its domicile determination, the Court—consistent with First Circuit guidance—takes an inclusive approach in an effort to bring before it all relevant, probative facts. *See, e.g.*, *Padilla-Mangual*, 516 F.3d at 34 ("In conducting a jurisdictional inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, hold an evidentiary hearing, and hear testimony in order to determine its own jurisdiction") (citing *Valentín*, 254 F.3d at 363); *Bank One*, 964 F.2d at 54-55 ("[W]e direct the district court to conduct further inquiry into the relevant jurisdictional facts and make further findings thereon. Additional evidence should be secured in whatever expeditious manner the district court determines—whether by evidentiary hearing, discovery, further affidavits, or any combination of these, or by other means").

## V. DISCUSSION

The Court first addresses Universal's contention that it lacks subject matter jurisdiction, as resolution on this issue affects the Court's power to hear the case. Concluding that Mr. Berrios was at the time of the filing of the complaint in fact, domiciled in Puerto Rico, the Court dismisses the case for failure to establish diversity jurisdiction.

As a threshold matter, while the Defendants raise their claim of lacking diversity in the posture of a motion for summary judgment, the substance rather than the form of the motion governs the Court's review. *See, e.g.*, *US Bank Tr. Co. N.A. v.*

*Heidi A. Taitt & G. Paul Taitt,* No. 2:25-cv-00485-LEW, 2026 U.S. Dist. LEXIS 129846 (D. Me. June 5, 2026) ("Defendants could file the very same motion… [r]equiring them to do so would only exalt form over substance and unnecessarily clutter the docket); *Med. Mut. Ins. Co. of Me. v. Burka,* No. 2:16-cv-462-GZS, 2017 U.S. Dist. LEXIS 138517 (D. Me. Aug. 29, 2017) ("Regardless of how Defendant has chosen to title his Motion, the Court treats the Motion as an additional motion for partial summary judgment"). Functionally, this argument is best understood as a 12(b)(1) motion to dismiss nested within a broader motion for summary judgment.

*Valentín v. Hospital Bella Vista,* 254 F.3d 358 (1st Cir. 2001), another case involving a plaintiff claiming domicile in Florida to sue defendants who were citizens of Puerto Rico, explains that when the defendant challenges diversity jurisdiction "the challenge can be launched in either of two formats." *Id.* at 363. The first is a sufficiency challenge, wherein the court accepts the plaintiff's version of "jurisdictionally-significant facts as true and addresses their sufficiency," assessing "whether the plaintiff has propounded an adequate basis for subject matter jurisdiction." *Id.*

The second is a factual challenge, which considers the accuracy of the facts rather than their sufficiency. *Id.* In a factual challenge, "the plaintiff's jurisdictional averments are entitled to no presumptive weight," and "the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.* ("a court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial

function. Thus, when a fact bound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached").

This approach contrasts with the traditional rubric in summary judgment motions, where the court views disputed facts in the light most favorable to the non-movant, here Mr. Berrios. Nevertheless, the motion for summary judgment context has been helpful in informing the Court about facts about which there is no dispute and focusing the Court on the parties' genuine disputes about material facts. However, in assessing the disputed facts, the Court has applied the Rule 12(b)(1) standard, not the Rule 56 standard.

The Court notes that Mr. Berrios, in his amended complaint, does not specifically plead that he is domiciled in Florida, but merely that he is a "resident of Orlando, Florida." *Compl.* ¶ 9. Residence is "relevant to the question of domicile" but not dispositive. *Aponte-Dávila v. Municipality of Caguas*, 828 F.3d 40, 48 (1st Cir. 2016). If Universal had posited a sufficiency challenge, the Court would find the allegations in Mr. Berrios's amended complaint insufficient to establish diversity jurisdiction as the only jurisdictional fact in his amended complaint is his asserted residency in Orlando, and the amended complaint also alleges that he maintained an apartment in Puerto Rico. *Compare Compl.* ¶¶ 9, 10 ("Mr. Berrios is . . . a resident of Orlando, Florida; Mr. Berrios's address is: 14343 Sports Club Way, Orlando, FL 32837), *with id.* ¶ 25 ("On January 19, 2021, the defective Samsung microwave was

delivered by Costco and/or RM Contractors to Mr. Berrios's apartment 1302 at Torres Del Escorial, 4002 Ave. De Diego, Carolina, PR 00987").

Consequently, the Court instead treats the Defendant's arguments as raising a factual challenge. In accordance with the Rule 12(b)(1) praxis, the Court attaches no presumptive weight to factual claims raised by either party and engages in an independent evaluation as to (1) whether Mr. Berrios was physically present in Florida and (2) whether he had the intent to make Florida his home. *Valentín,* 254 F.3d at 366.

### A. Physical Presence

Domicile requires "physical presence in a place". *Valentín*, 254 F.3d at 366 (citing *Rodríguez-Díaz*, 853 F.2d at 1029). In his opposition, Mr. Berrios has claimed that his domicile is in Florida, but as acknowledged by both parties, when Mr. Berrios filed his 2022 Puerto Rico tax return, he represented that he had resided in Puerto Rico during the entirety of 2022. UDSMF ¶ 22; UPRDSMF ¶ 22. Indeed, in his opposition, Mr. Berrios concedes that at the time of the filing of the complaint, he was physically in Puerto Rico, not in Florida, and explains his physical presence in Puerto Rico as the result of the "catastrophic injuries he sustained from the defective microwave and its negligent installation." *Pl.'s Opp'n to Universal* at 9.

The Court agrees with Mr. Berrios that his physical presence in Puerto Rico at the time of the filing of the complaint alone does not dispositively establish his domicile in Puerto Rico. Physical presence "does not literally mean actual physical presence in the state on the date the lawsuit was filed; otherwise a life-long resident

of a state would lose that status because he happened to be out of state the day the lawsuit was filed." *Hearts with Haiti, Inc. v. Kendrick,* 192 F. Supp. 3d 181, 192-93 (2016), *aff'd* 856 F.3d 1 (1st Cir. 2017) (Souter, J.). Consequently, the fact that Mr. Berrios was physically in Puerto Rico at the time of filing does not necessitate the conclusion that his domicile was necessarily in Puerto Rico.

However, "a person's physical presence in the state where he claims a domicile remains relevant." *Hearts with Haiti, Inc.,* 192 F. Supp. 3d at 193. Moreover, this was no mere trip to Puerto Rico: Mr. Berrios has acknowledged that, during the relevant period, he lived in Puerto Rico for a period exceeding a year while recovering from the accident that is the subject of this case. UDSMF ¶ 7; UPRDSMF ¶ 7; UDSMF ¶ 8; UPRDSMF ¶ 8; UDSMF ¶ 22; UPRDSMF ¶ 22. Mr. Berrios argues that "citizenship is not necessarily lost by protracted absence from home." *Pl.'s Opp'n to Universal*. (citing 35 C.J.S. Federal Courts § 56) *see also Aponte-Dávila*, 828 F.3d at 48 (concluding that plaintiff remained domiciled in Texas as his "stays in Puerto Rico while obtaining medical care" needed in the aftermath of the accident were "insufficient to effect a change of domicile"). However, the First Circuit has also ruled that one can acquire a new domicile even if they move for the purposes of obtaining medical care. *Hawes v Club Escustre El Comandante,* 598 F.2d 698, 701 (1st Cir.1979) (reversing the district court determination that the plaintiffs had "failed to show their intention to abandon their old domicile in Puerto Rico") (citing to *Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir. 1973) ("the bare fact that a person has been

'compelled' to relocate within a particular jurisdiction does not ordinarily prevent him from becoming domiciled therein")).

Mr. Berrios and Universal focus their argument on whether Mr. Berrios effectively changed his domicile back to Puerto Rico while engaging in lengthy rehabilitation there. The bigger issue with Mr. Berrios's claimed domicile, however, is that the preponderance of evidence does not establish that his domicile ever truly changed to Florida in the first place. Setting aside the inquiry of whether Mr. Berrios had the intent to remain indefinitely in Puerto Rico at the time of filing – which it seems he did – the Court evaluates instead whether Mr. Berrios's alleged move to Florida in 2012 supports the inference that he intended, at that point, to establish his primary home in Florida.

### B. Intent to Remain

Utilizing the non-exhaustive list of factors grounding inferences of domicile as laid out in *García Pérez*, 364 F.3d at 351,[14] the Court considers each in turn.

#### 1. Voting

Mr. Berrios alleges that he "remained registered to vote in Florida, even attempting to vote there in 2024." *Pl. Sur-Reply to Universal* at 4. Domicile, however, is established at the time of filing. *García Pérez*, 364 F.3d at 350-51. While subsequent events "may bear on the sincerity of a professed intention to remain," they are not part of the "primary calculus." *Id.* at 351. Consequently, the Court

[14] In *Hearts with Haiti*, Justice Souter writing for the First Circuit listed some significant factors: (1) where the plaintiff has lived, (2) where he owns property, (3) where he is employed, (4) where he pays taxes, and (5) where he intends to be buried. 856 F.3d at 3. The First Circuit evaluated other facts to determine whether they were consequential in that case. *Id.*

instead considers Mr. Berrios's voting behavior prior to the date of filing the instant suit in 2022.

The facts available to the Court regarding Mr. Berrios's voting registration and actual voting history suggest that his physical presence in Florida was not connected to a sense of civic duty or engagement. Mr. Berrios, despite allegedly moving to Florida in 2012, voted in Puerto Rico as late as 2020. UDSMF ¶ 30; UPRDSMF ¶ 30. In fact, there is no evidence that he has ever voted in Florida. This does not support an inference that Mr. Berrios intended to reside primarily in Florida when he moved in 2012, or anytime thereafter.

As for whether he was registered to vote in Florida or Puerto Rico as of March 3, 2022, the date of the filing of the complaint, the record is somewhat confusing. Universal asserted in its statement of material facts the following:

> 29. On the date the Complaint was filed on March 5th, 2022,[15] Plaintiff was registered to vote in Puerto Rico.

UDSMF ¶ 29. Mr. Berrios responded:

> Mr. Berrios does not contest these facts. Mr. Berrios clarifies that he was registered to vote in Florida.

UPRDSMF ¶ 29. The Court interprets this response as admitting that he was registered to vote in Puerto Rico as of March 3, 2022, but he later registered to vote in Florida. Yet, in his opposition memorandum, Mr. Berrios states flatly that "[a]t the time of filing, Mr. Berrios . . . was a registered Florida voter." *Pl.'s Opp'n to Universal* at 10.

---

[15] This date is slightly erroneous, as noted, the date of the filing of the complaint was March 3, 2022. *See Compl.*

The Court has looked behind the statements of material fact to determine what the record says about his voting status. In support of paragraph twenty-nine, Universal cited page 147 of Mr. Berrios's deposition. UDSMF ¶ 29 (citing Exhibit #1, P. 147, L. 1-25). Exhibit 1 is the deposition of Mr. Berrios and at page 147, the following colloquy appears:

> Q. And by the date of the filing of the complaint in this case, were you registered to vote in Florida?
>
> A. I understand that – yes, yes. Yes.
>
> Q. And did you vote there in the 2020 election?
>
> A. No.
>
> Q. No. Did you vote here in Puerto Rico for the 2020 elections?
>
> A. Yes.

Mr. Berrios's testimony that he was registered to vote in Florida as of March 2022 seems contradicted by his acknowledgement that when he attempted to vote in Florida in 2024, his name did not appear on the voter rolls, and he was not allowed to vote. UPRDSMF ¶ 30; *Universal Mot. for Summ. J.* Attach 2. *Deposition of Carlos J. Berrios Quinones* at 148:18-149:8 ("I entered the school to vote, but I was unable to vote due to problems at the school. . . my name did not appear registered at the school"). Also, Mr. Berrios voted in Puerto Rico in 2020, so it is clear he was not registered to vote in Florida that year, and he admitted that he represented to the Puerto Rico taxing authorities that he was living there for all of 2022. Thus, Mr. Berrios would have had to register to vote in Florida after he voted in 2020 but before

2022. None of this makes much sense. Moreover, this Court has held that actual voting practices are a stronger indicium of domicile than mere maintenance of voter registration in a state. *Hearts with Haiti, Inc.,* 192 F. Supp at 198 (reasoning that "Mr. Geilenfeld's possession of a voter registration card issued nearly eight years before he filed suit, and which he never once used to vote in an election, diminishes what must otherwise be considered a weighty factor").[16]

At best, the question of where Mr. Berrios was registered to vote in March 2022 is equivocal. In his response to Universal's statement of material facts, Mr. Berrios admits he was registered to vote in Puerto Rico as of March 3, 2022, but he testified that he was registered in Florida at the same time. The parties have not produced the voter registration rolls, which could clarify the issue. Mr. Berrios alleges no attempt to resolve this issue or cast votes in elections after 2024. *Universal Mot. for Summ. J.* Attach 2. *Dep. of Carlos J. Berrios Quinones* at 148:18-149:8 ("they did not clarify it for me"). The facts available to the court regarding Mr. Berrios's civic engagement as of March 3, 2022 are contradictory but, because of the contradictions, cut slightly in favor of domicile in Puerto Rico, where the evidence establishes he last voted before March 3, 2022.

**2. Real and Personal Property**

Mr. Berrios's real and personal property holdings also suggest that his domicile is in Puerto Rico. Mr. Berrios refers to the Florida address he proffers to the Court

[16] In the First Circuit affirmance, Justice Souter noted that Mr. Geilenfeld was registered to vote in Iowa, but he observed that he had not voted in Iowa since 1972. *Hearts with Haiti*, 856 F.3d at 3. This confirms that the test centers not as much on where a person is registered to vote, but where he or she actually votes.

as his "primary residence." *Pl.'s Opp'n. to Universal* at 9. Yet Mr. Berrios does not own this residence – his father does. UDSMF ¶ 18; UPRDSMF ¶ 18. This is notable because Mr. Berrios *does* own a residence in Puerto Rico: the site of injury that is the subject of this litigation. UDSMF ¶¶ 5, 6; UPRDSMF ¶¶ 5, 6.

Mr. Berrios explains that, though he resided with his parents for the duration of his recovery, he left his Florida residence empty and waiting for his return. This, he argues, is a "classic hallmark of the *animus revertendi* (intent to return) that defines domicile." *Pl.'s Opp'n to Universal* at 9. The problems with this argument are twofold. First, Mr. Berrios did not own the Florida property, and he did not present evidence that his father, the property's owner, actually or would have authorized him to rent it out. Second, Mr. Berrios also acknowledged in his deposition that he has never rented out his property in Puerto Rico, suggesting the same inference could be drawn there. *Universal Mot. for Summ. J.* Attach 2. *Dep. of Carlos J. Berrios Quinones* at 30:11-31:13. In fact, he was in the process of making substantial repairs and upgrades to the Puerto Rico apartment, *Id.*, which the Court in *De La Rosa v De La Rosa,* 118 F.4th 393 (1st Cir. 2024), noted as a potentially significant factor in determining a party's primary residence. *Id.* at 400 ("José and Algarín fail to address the more than $1 million that Edwin had spent on improvements to his Puerto Rico apartment").

Moreover, Mr. Berrios also owns and maintains personal property in Puerto Rico, namely his two boats he has kept and still keeps docked in Piñones. UDSMF ¶ 27; UPRDSMF ¶ 27; *Universal Mot. for Summ. J.* Attach. 2 at 123. *See García*

*Pérez,* 364 F.3d at 351 (identifying the "location of personal and real property" as a factor relevant to determining domicile). By contrast, there is no evidence that he owns any personal property in Florida. *See Valentín*, 254 F.3d at 366–67 (affirming finding of Puerto Rico domicile where plaintiff "left the bulk of her belongings at her residence in Mayagüez" and "kept a car registered there," notwithstanding her physical presence in Florida). Mr. Berrios merely alleges that he has "possession and custody of a loaned motor vehicle" that he "uses in Florida." UPSAMF ¶ 9. The Court further notes that this assertion is unsubstantiated, as the car registration Mr. Berrios proffers as evidence of his custody merely shows that a 2021 Chevy is registered to someone named Carlos Emilio Ortiz Scott as of November 22, 2024, over two years after the date of filing this case. *Pl. Opp'n. to Universal*, Attach. 8. Mr. Berrios provided no documentary confirmation that he took custody of Mr. Ortiz's 2021 Chevy, or when he began to borrow the Chevy, or what the terms are of the loan.

Mr. Berrios also mentions multiple times that he is a holder of a Florida SunPass. *Pl.'s Opp'n to Universal* at 9. The Court considers this claim, though it does not clearly fit within any of the previously enumerated factors. Mr. Berrios includes evidence that he obtained his SunPass on November 6, 2021. *Pl. Opp'n to Universal,* Attach. 5. While this lends modest weight to his claim of domicile, the Court cannot infer intent to remain as of 2012 from a SunPass obtained nine years after relocation. Moreover, the Court notes that Mr. Berrios obtained his SunPass while, as he acknowledges, he was recovering from his injury in Puerto Rico, where he remained until well after he filed this lawsuit. UPSAMF ¶ 14, 15; UDSMF ¶ 22;

UPRDSMF ¶ 22. The Court infers from this timeline that Mr. Berrios could not have actually used the SunPass prior to filing this lawsuit and consequently assigns it little weight.

**3. Employment**

Universal makes much of the fact that Mr. Berrios's only source of income was from a company located in Puerto Rico, and that Mr. Berrios filed a Puerto Rico tax return. Mr. Berrios responds that this argument "mistakenly conflates the *source* of Mr. Berrios's income with the *situs* of his domicile." *Pl. Opp'n to Universal* at 9. The Court agrees that the location of the employer is, particularly in the digital era, not determinative of the physical location of the employee, and that it is eminently possible that an employee could consider themselves domiciled in an entirely different state than that of their physical office. This conclusion is bolstered by *García Pérez,* 364 F.3d at 353, wherein the First Circuit specifically noted that the act of filing a Puerto Rico tax return cannot itself constitute determinative evidence of domicile because any individual deriving income from Puerto Rico is required to file a tax return regardless of their state of citizenship.

However, the facts of *García Pérez* diverge from the instant case, as the plaintiff in *García Pérez* also listed a Florida address on his Puerto Rico tax return. *Id.* The Court, noting this, reasoned that the "tax return provides no evidence that Puerto Rico was the appellants' financial base," and concluded that the financial picture presented suggested that Florida was the family's domicile despite reporting some income derived from Puerto Rico. *Id.* at 353-354. Mr. Berrios not only filed a

Puerto Rico tax return but also listed on his filings a Puerto Rico address. UDSMF ¶ 21; UPRDSMF ¶ 21. This renders his case more akin to *De La Rosa*, in which the court noted the plaintiffs used the address of his Puerto Rico apartment in filing his Puerto Rico tax returns and inferred he had not made a change in domicile. 118 F.4th at 401 ("We therefore cannot say that the district court clearly erred in factoring the returns into its determination that Edwin had not effected a change in his domicile to New York").

Moreover, even setting aside the issue of the claimed Puerto Rico residency, the Court notes that the test for domicile is a totality of the circumstances evaluation wherein a presiding court must look at the factors as indicia of *intent* to remain. *See Hearts with Haiti, Inc.* 192 F. Supp 3d at 192 ("in assessing the later requirement, intent, the First Circuit has instructed courts to consider these factors. . . these factors are to be applied in a holistic rather than mechanistic manner, as "[n]o single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature"") (citing *García Pérez*, 364 F.3d at 351). While Mr. Berrios's employment in Puerto Rico is not determinative of his domicile, it removes one possible avenue by which Mr. Berrios could otherwise establish professional, personal, or civic ties to the state in which he claims he is a citizen. The fact that Mr. Berrios seemingly never sought work in Florida upon moving in 2012 and instead has worked only for the "family business," UDSMF ¶ 15; UPRDSMF ¶ 15, remotely or not, suggests that his primary ties remained with Puerto Rico. *See García Pérez*, 364 F.3d at 353–54 (emphasizing that

the plaintiff "had built a professional foundation for himself in Miami" and "explored job opportunities in Miami"); *Valentín*, 254 F.3d at 366 (noting that the district court "weighted heavily the undisputed fact that the plaintiff did not quit her job" in Puerto Rico before filing suit).

**4. Driver's License**

Mr. Berrios, in his opposition to Universal's MSJ, attaches his Florida driver's record and copies of his Florida licenses. *Pl. Opp'n. to Universal*, Attachs. 2-4. The record supports the conclusion that Mr. Berrios held a driver's license in Florida from March of 2012 onwards which, standing on its own, lends support to his claim that he changed his domicile in 2012. A driver's license is one recognized indicium of domiciliary intent. *See Padilla-Mangual*, 516 F.3d at 32 (identifying "driver's and other licenses obtained" as relevant to domiciliary intent but explaining that "no single factor is controlling").

However, Mr. Berrios also asserted in his deposition that he believed he held a Puerto Rico driver's license during this same period. *Universal Mot. for Summ. J.* Attach 2 at 144:12-19. Consequently, this factor does not lend much support to either party's position. As the First Circuit has observed, "[w]hile a person may have more than one residence, he can have only one domicile." *Santana de la Rosa*, 91 F.4th at 6 (quoting Bank One, 964 F.2d at 53)). Thus, Mr. Berrios's possession of a Florida driver's license is evidence relevant to whether he intended to make Florida his domicile, but his testimony that he simultaneously maintained a Puerto Rico driver's

license diminishes the persuasiveness of that evidence. On balance, this factor provides only limited support for Mr. Berrios's asserted change of domicile to Florida.

**5. Banking Account**

Mr. Berrios also proffers evidence of a Chase Bank account as evidence of his intent to establish domicile in Florida. *Pl. Opp'n. to Universal*, Attachs. 6, 7. He suggests that he has maintained an active bank account since 2012. *Pl.'s Opp'n to Universal* at 9. The bank statements Mr. Berrios attaches, however, do not indicate regular use of the account. *Id.* Attachs. 6, 7. Rather, the account appears to have remained essentially dormant notwithstanding the substantial balance deposited in November 2021. Although the location of a bank account is an accepted indicium of domiciliary intent, the First Circuit has looked to the actual use of the account in assessing the weight to afford that evidence. *See García Pérez*, 364 F.3d at 351–53. (explaining that the domicile inquiry considers the "substantive nature" of a party's contacts and concluding that a Miami account supported Florida domicile where it "became the primary account for the family's expenses," while a retained Puerto Rico account did not support Puerto Rico domicile where the record did not support characterizing its use as "regular").

The Court also notes its confusion regarding Mr. Berrios's assertion that he has no active bank accounts in *or outside* of Puerto Rico. UPRDSMF ¶ 24. The Court is unsure whether to accept this contention given that it is plainly contradicted by the existence of the Chase Account. Setting this point aside, however, the Court concludes at present that the evidence suggests that Mr. Berrios does not make

regular use of banking accounts in either Puerto Rico or Florida and thus assigns this factor no weight.

### C. Mr. Berrios is Domiciled in Puerto Rico

Taken together and viewed logically, Mr. Berrios's true domicile is Puerto Rico. While he has reportedly lived in Florida for periods of time since 2012, the evidence currently available to the Court does not indicate that this move enacted a change in domicile. Upon his alleged move in 2012, Mr. Berrios did not purchase property, personal or otherwise, or find work in Florida. He continued to vote in Puerto Rico as late as 2020, pay taxes in Puerto Rico throughout the time leading up to March 3, 2022 and report in so doing that he was living in Puerto Rico, maintain personal property in Puerto Rico throughout this time, and buy real property in Puerto Rico eight years after his alleged relocation. The strongest averment of intent to remain upon moving in 2012 that Mr. Berrios proffers is obtaining a Florida driver's license, which is complicated by his reportedly also maintaining his Puerto Rico driver's license, and not afforded dispositive weight regardless. *Valentín*, 254 F.3d at 366–67 (noting that plaintiff obtaining a Florida driver's license was favorable evidence grounding her claim that she had changed her domicile but ultimately concluding that "these contacts revealed no more than a desultory desire to relocate to Florida at some indefinite future time").

The other indicia of domicile that Mr. Berrios provides to the Court, his bank account, voter registration, vehicle registration, and SunPass each suffer from evidentiary or substantive defects with respect to their indication of intent to remain,

and they are all asserted as of 2020 or later, lending no support to the claim that Mr. Berrios changed his domicile in 2012. Moreover, even if the Court ignored those evidentiary defects, it would still find that there is insufficient evidence to suggest that Mr. Berrios intended to make Florida his "true, fixed home, and principal establishment", *Padilla-Mangual,* 516 F.3d at 31(quoting *Rodríguez-Díaz,* 853 F. 2d at 1029), in 2012, or that, upon moving, he attempted to lay down the sorts of roots other courts have found suggest an intended change in domicile.

Mr. Berrios acknowledged in his deposition that he would return to Puerto Rico more than five times per year. *Universal Mot. for Summ. J.* Attach. 2 at 145:14-25. He further stated that "I come and go. . . because of the ease," indicating that he views his life as existing in both places. *Id.* at 130:5-9. This inference is supported by the series of alleged events relating to Mr. Berrios's injury. He reported obtaining his apartment in October 2020, then claimed that he was present in the apartment at the time that the microwave involved in the instant case was delivered on January 19, 2021. UPRDSMF ¶¶ 6, 38. The microwave was reportedly installed on January 27, when Mr. Berrios also alleges he was present. S-CDSMF ¶¶ 20, 23; S-CPRDSMF ¶¶ 20, 23. He was subsequently injured March 5, 2021. S-CDSMF ¶¶ 28, 32; S-CPRDSMF ¶¶ 28, 32. The evidence indicates that, at the very least, Mr. Berrios was physically present in Puerto Rico to work on his property every other month, spending at least a week there each time. Even after his recovery, Mr. Berrios describes his residency as "in Florida right now, but… back and forth." *Universal Mot. for Summ.*

*J.* Attach. 2 at 127:17-19. This characterization does not suggest the "intent to remain," that grounds determinations of domicile.

The Court agrees with Universal's characterization of Mr. Berrios's ties to Puerto Rico as far stronger than those to Florida and agrees that the evidence produced by Mr. Berrios is insufficient to conclude that his domicile is or was at any point Florida. There is only minimal substantive evidence suggesting Mr. Berrios engaged in "the ordinary arrangements for settling into a community." *García Pérez*, 364 F.3d at 354 (concluding that Plaintiffs had evinced intent to change their domicile from Puerto Rico to Florida and that the remaining "ties [to Puerto Rico] appear more tenuous" compared to the "evidence of intent to remain in Florida and earn a livelihood there"). The logical inference from the evidence before the Court at this time is that Mr. Berrios maintains homes in both locations and made the decision to remain in his *primary* home for the duration of his recovery from the alleged injuries. It is unnecessary to engage whether Mr. Berrios's lengthy stay in Puerto Rico during his recovery enacted a change in domicile from Florida to Puerto Rico, because he had never changed his domicile to Florida in the first place. In short, Mr. Berrios has failed to meet his burden as the party invoking jurisdiction to "clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Marcello*, 464 F. Supp. 2d at 41.

As Universal is also a citizen of Puerto Rico, *Universal Mot. for Summ. J.* at 2, there is not complete diversity between the parties. 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,00 . . . and is between . . . citizens of different States"). Consequently, the Court concludes that it has no subject matter jurisdiction to hear this case.

## VI. CONCLUSION

The Court GRANTS Universal's Motion for Summary Judgment (ECF No. 85). The Court DISMISSES Samsung and Costco's Motion for Summary Judgment as moot (ECF No. 83).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of November, 2026